2017-1384 Source Search Technology v. Kayak Software Corporation 2017-1384 Source Search Technologies There's another attempt to do it, where you go out and you get what they call... I hear a lot of discussion about the facts, but you still haven't answered. What is your inventive step here? The use of a set of tightly coupled interfaces that are prearranged in advance to know in advance the material terms of each product and how and in what format they are stored in each vendor database, and to plunk that little interface in before you do it, rather than upload everything in advance like in the prior order. And where in your patent is that interface talked about? I'm sorry. It just talks about using... And that's another reason why we would never claim that the software was inventive, because the software existed. It talks about doing it in our patent in several places. One place that I can point to right now is at Column 5, lines like 37 through, let's call it roughly 47, 48. Can you point to that in your claims? I mean, that's what we looked at first. Well, the claims, the way it got into the claims, the claims just say, obtaining by said filter means, responsive to the filtering at least... I'm sorry. Where? This is at Appendix 85, and it's Column 2. I'm looking now at Claim 12. Obtaining by the filter means responsive to the filtering from at least one of the potential sellers over a data network, quotes to supply the goods or services. And the quotes were defined in the Markman as not just the price, but the price and other terms of the transaction in sufficient detail to constitute an offer capable of acceptance. And so the patent talks at Column 5 that you have to use software to cross-reference into the vendor database. And that's a different way of doing it than making the vendor upload all those terms in advance to a single database, like the Dworkin reference, or as in the FAST reference, only being able to pull the price because you could find that and then having to do the other terms later. It all sounds like different software programs differently to get different types of information. I agree with that. What am I missing about that? I agree with that to this extent, Your Honor. I guess I would say I agree with that, but here's the point. The point is that the FAST way of doing it was the prior art that this court held specifically because it could only get the basic information, it didn't have this tight coupling, that the prior ruling of invalidity was incorrect. So if I could turn back. Well, I understand all that. I don't understand why you're talking about obviousness in the prior court reference. I mean the prior art could also be invalid under ALICE, so the fact that you could get over it in terms of obviousness doesn't do anything for you. I agree with that 100%, Your Honor, but with due respect, I think that goes to a different issue. If that is correct is you talk about basically program software as your inventive concept, but when you were arguing for claim construction on a means plus function term, you said that that software was so known in the art that you didn't have to supply actual structure when you used means plus function claiming language. I disagree with that, Your Honor, for the following reason. Is it not true that your expert testified that you didn't have to provide structure because anybody could program that software? That's true. The first part is the part I disagree with, which is we didn't argue in ALICE that there was something novel or inventive about the software. Didn't you say it was no small step, no small task, I think it was, to set up the software? In the Patent Office footnote it says it's no small task because we're talking about what it takes to change the prior art. In the ALICE motion, what we argued in the ALICE motion. The ALICE motion cited to that footnote in the Office Action Response to the Re-Exam, right, which is the quote of, hey, this is no small task to build these specialized software innovations. Among a litany of other sites, and if I had known that there was this alleged contradiction even, I probably would have just cited the other three. The point I'm trying to answer to Judge Hughes's question is that when I said before I disagree, I don't disagree that the expert said that in Mark. Where I disagreed, Your Honor, with the statement you made is we did not argue in ALICE that the software interface was some great novel thing. What we said was the use of that interface rather than a central database or a fast time system is the inventive concept. And again, even when Kayak in their ALICE brief said, well, you're just using standard software to do this interface, we never disputed it. But that sounds like you're conceding under Step 1 that your idea is abstract, but then saying under Step 2, even though it's abstract, the fact that you programmed it to get different information is somehow an inventive step. What I've said – Or maybe that just the fact that it can get different information is an inventive step. What I said is the inventive step, too, is the fact that I have gotten this information through the use of an interface, whereas the prior art has gotten this information from a single central database that requires uploading in advance, and whereas the other prior art can't get the full information. It requires a subsequent exchange of more information afterwards. Because it was programmed differently. Correct. But, Your Honor, I would point out that in both the Bascom and the Amdocs case, there were explicit findings by this court that each and every step, that there was an abstract idea in the first step, and each and every step was implemented with conventional technology. We never disputed that. What we said was we put the interface in. And I want to make one overreaching point here, Your Honor, and that is – Before you go on, help me understand it. So this Alice response is at page 1471. Correct. That's what we're talking about now. 1471. And you say an important aspect of the 328 is the specialized predefined software interface between the central computer and the vendor's computer. This specialized software. We're talking about the software. And then the very next paragraph begins, the technology in the 328 thus represents a specific technical solution. So I understand your argument today, but I don't necessarily know how I can find that this fact finding, which I have to review for an abuse of discretion, that this articulation in point 1471 represents an attempt by you all to claim that the specialized software is the technical solution that overcomes Alice. I don't review this de novo. This is a fact finding. I've got to look at what you said here and say, could the reasonable fact finder in this case come to this conclusion? Is there substantial evidence in what you said for the conclusion that you were relying on the software to attempt to overcome the Alice rejection? How do I not have to affirm that in light of your thus language beginning the second paragraph and your specialized software language in the paragraph preceding it? Two reasons. Whether I agree with it or not. Two reasons, Your Honor. First of all, the finding upon which the exceptional case is based is that the Alice opposition contradicted the Markman. The paragraph you just read is copied from my Markman brief. It's copied from it. Number two, Your Honor, if you look at the substantive arguments that were made for patentability, which begin at page 1475, the two methods are, the two arguments are, number one, there are other ways to do this without using the pre-distributed software tight interface, and number two, that we solve a technical problem by rearranging the components, like Bascom. Nowhere in either of those arguments does it say, we've got this specialized software and the improvement is better than some other software that's novel. The trial judge confused what we were arguing, which was the use of the software, as opposed to two other ways of doing it, with the idea that the software itself was something novel or patentable. We never said that. We always agreed up front that the software was readily available. Even the patent says that. I think it may be on the part I cited you to before. We always agreed it was just suitable software that does database queries. Okay. You're into your rebuttal time. Do you want to save some? Yes, I do, Your Honor. Thank you very much. Mr. Cotter. Thank you, Your Honors. John Cotter from K&L Gates, Ford defendant, Appellee Kayak Software Corporation, arguing for affirmance of the District of New Jersey's judgment that this case was exceptional. So as I understand Mr. Kaplan's argument, he makes clear and concedes that in the Markman brief and elsewhere, they argued that this software was routine, that their expert did, and that what his argument really narrowly limited is, is that in his Alice briefs, he just didn't say anything to the contrary. And thus, since this entire fee award is predicated on supposedly an inconsistency between the Markman opinion and the Alice brief on page 18 of the appendix, that's the only thing it's predicated on. The entire exceptional case finding is predicated on this. Can you just jump right to that and address why that fact finding is, in fact, supported by substantial evidence? And if you disagree with anything I said, please correct it. Well, there is a totality of the circumstances that the court did consider, and they were all in the court's mind. What else did the court articulate as its basis? The court articulated the flip-flopping between what went on during the Markman indefiniteness argument and the Alice argument on the specialized, predistributed software. And then said the inconsistency is subtle, but it's apparent from the papers, and the only thing they cite is this. I agree with you. That's what the court said. So subtle, but there. Right. So it's not just generalized flip-flopping. Right. That's not what they cited. They didn't say you flip-flop all the time, you're a chameleon, you're constantly citing the wrong thing. Not in this fact finding for exceptional case, they didn't say anything like that, did they? No, the court did not say that. This is not based on litigation conduct generally. It's based on a specific inconsistency. Well, that's what the court referenced in its decision. I agree. And the specific inconsistency is this. What happened is SST found itself in a position on 101, late in the case, with the change law of Alice. Alice made clear that if you have an abstract idea, then in a computer software environment, which this claim is, that simply claiming generic software to implement that abstract idea is not going to satisfy step two, is not going to give you eligible subject matter. That was clear. SST was faced with that. And in the Alice motion, in its opposition to the Alice motion, SST cited the portion you referenced on page 1471, cited the specialized predefined software interface and the arguments that SST had made in reexamination to get over prior art. SST cited to those. But then in its arguments, although it's talking about preemption, and I think in a way to avoid, really, the flat Alice requirement that if you're going to get past the abstract, you're going to show the abstract idea, you have to show it's implemented with something other than generic software. And the implementation that SST pointed to was the predistributed software. That predistributed software is cited not only on page 1471, but also 1475. And what's the language of 1475 that you think demonstrates that they are hinging their Alice argument on the special nature of the software? The citation that each of the claims at issue here, the second full paragraph on the page, each of the claims at issue here requires the system acquiring the required and available quote information from the vendor's product database using predistributed software. Citing the Markman decision and several other points in what was then called the joint appendix from the reexamination, including footnote four, the joint appendix at 1478. That was a different set of numbers. Is footnote four that no small task thing? Yes, it is. And then SST goes on to explain in its 101 brief in describing that footnote four, it says, explaining the requirement for the specialized predefined software. Where are you? I'm sorry, I don't mean to go too fast. 1475, middle of the page. Well, I'm at your footnote four. Is that not, where were you just reading from? No, I was reading from appendix 1475. Yep. Each of the claims paragraph, the second full paragraph, getting to the parenthetical after the first sentence. Yes. And there's a citation to the footnote four. They're on the fourth line of that paragraph. That's a citation to the reexamination argument about no small task. And then SST adds the parenthetical in its 101 opposition, speaking of footnote four, explaining the requirement for the specialized predefined software interface to solve the database compatibility problem of the prior art. So, and then going on to cite another portion of the reexamination. I guess this is pretty flimsy, as far as I can tell. Pretty flimsy. I don't know that it's so flimsy that I can overturn the lower court, but in terms of claiming that this amounts to a direct conflict with the Markman brief, this particular language, I mean, the best line, the only good language I see is on 1471. Granted, there is a cite to the footnote there four at 1475, but, boy, they don't even articulate the footnote. They don't even use the no small task language. It's in a long string cite of one, two, three, four, five, six, seven different cites. You know, you're pulling from that footnote, and you're saying, aha, that footnote has the language that offers the conflict, and it's cited here. That's a flimsy little argument. I did not pull from it, of course. It was the District of New Jersey, an experienced court that handles lots of patent cases, and saw what went on in this case and saw the contrast. First off, I don't know if this judge is an experienced judge who handles lots of patent cases. No doubt you do. But apart from that, you're saying he saw what went on in this case. He didn't cite anything that went on in this case. He cited this one contradiction as the basis for his exceptional case finding. He did not make a fact finding that indicates there was an overall course of conduct or litigation misconduct or abuse of his courtroom or this is the worst case I've seen in 30 years kind of thing, which we do see in these exceptional case findings. In some of them, of course. And in this one, that's not what the judge was relying on. The judge was relying on this particular flip-flop because it was at a pivotal point in the case. And SST, when faced with Alice, and now faced with an Alice motion, it had to deal with Alice. But he based an entire exceptional case finding on a single flip-flop. I understand your argument that it's a pivotal point in the case, but a single flip-flop. So I'm trying to make sure there really is a flip-flop because usually we have a course of conduct. Usually it's a lot more than a single misrepresentation or inconsistent statement. And I guess what I'm struggling with is where precisely you think is the most poignant evidence in their Alice brief that indicates there really was, in fact, a flip-flop. So you pointed me to 1475, and I walked through it with you. Is there anything else in the Alice brief that you think further reinforces the notion that they were stressing the software as a critical component to overcome the Alice? Yes. On page 1479 of the appendix is a carryover paragraph. And I won't read the whole thing. Just tell me which part you think is important. Right five lines down, starting at point three, actually, at three lines down, going on to describe the pre-distributed software to overcome the interface problem as the known technical problem, citing footnote four, among other appendix sites, and then stating, far from claiming any generic computerized version of the method, the 328 file shows the method was already computerized and a specific inventive concept was added to overcome a technical database problem. The specific inventive concept argued during the reexamination was that the idea of reaching out to or sending specialized predefined software to vendors was, that was the idea depicted as the item, the technical thing that created the invention. And the implementation was stated very clearly by Dr. Poncha in his declaration that the implementation was well known and in use for many years. So he was talking about implementation. Isn't it possible that what's maybe the confusion on the district court's part here is that they agree that it's an abstract idea done in conventional means, which would normally fail Alice. And they're not trying to say it meets step two because of the specific programming, but just because it's such a fantastic abstract idea, it's in itself inventive. I mean that argument is never going to win in most cases, but it seems like that's what they're arguing, that the specific combination of data and information that they were going to get through this conventional software programming was so innovative that nobody had ever thought of it, that it should be eligible under Alice. That argument doesn't seem to be inconsistent with the markup where they said it would be easy to program this idea. If that's the case, I don't see any real inconsistency. I see an argument approaching frivolousness in defending the Alice, but that's not what the district court relied on in awarding fees here. Well, I think it is inconsistent because the very statement, again, there are two parts to Alice. There's step one and step two. We all know that. Step one was conceded. Now faced with step two. Had to show something under Alice that showed it was not generic software. Alice says— No, I think you're getting step two wrong. I don't think step two means you have to show something, if we're in the software realm, that it's not generic software. I think you have to show that for some reason the abstract idea is otherwise innovative and a technological advancement and is still eligible despite the fact that it can be programmed using conventional software. Respectfully, Judge Hughes, I disagree. I believe Alice is crystal clear to me on— You are about the first person that has said that Alice is crystal clear. On that— I doubt your credibility on that. That one point, Your Honor, that one point, that if step one, if it's abstract, then generic software isn't going to do it. It says that, as I read it, on 134 Supreme Court 2352. I know there's other discussion in Alice, but— Yeah, I mean, I think in the context of Alice that may be true and why I tend to think that that argument approaches frivolousness, even in this case, but it does mean that he's making a different argument than the argument he was making at Mark meant to me. It means he's making a really, really poor Alice eligibility argument. But the district court didn't rely on the weakness of the Alice argument. He relied on the apparent conflict, and I'm not sure I see an apparent conflict. Well, the district court did, and in its discretion, it pointed to specific places it saw that apparent conflict, and I do submit under the two-step analysis of Alice and comparing that to what was said in Markman, it is a clear contradiction. And when you look at the Poncia Declaration— Well, actually, the district court said the contradiction is subtle. He didn't say it was clear. Subtle. Subtle but apparent? Subtle but apparent. So I don't think it's a clear contradiction would even be his characterization. It's subtle but apparent. And the apparentness, if you go back to the Poncia Declaration, he's talking about implementation of the idea. He says the implementation of the idea is known to one of ordinary skill in the art, known to someone with a basic software background, and known for years. So that implementation is something that SST was relied on in the places I cited to, in the argument and in the brief, in its 101 argument. And SST was faced with that and had to try to come up with an idea, I mean, a concept to get around Alice. And instead of facing Alice, it tried this effort to take that implementation and say that that implementation, you know, didn't preempt, that that implementation did get over the prior art. And that was SST's effort on Alice. And instead of facing the issue squarely and ending the case, we ended up with another many months of litigation and significant expense. And SST did not appeal the 101 decision. It did not appeal any of the findings or conclusions of that decision. And those are binding on it. And that doesn't necessarily mean it made a, it doesn't necessarily characterize the quality of its argument, but it does show that anything SST is trying to do to point fault in what the district court did in 101, it really doesn't stand on good ground for doing that on this appeal from the exceptional case determination. So, you know, to sum up with the short time I have left, in this case is an abusive discretion standard, and as Judge Moore recognized, it's a highly deferential standard of review. And indeed, deference to the trial court is the hallmark of abusive discretion review. And the trial court here saw the record, read the record, heard the arguments, considered all the facts and all the law, and made a determination that in its view, it was a contradiction, subtle though apparent. And I believe the record supports that as you read what SST filed in its Alice opposition. If there are no more questions. Okay, thank you, Mr. Cotter. Mr. Kaplan, you have some rebuttal time. Mr. Kaplan, please bring your appendix up with you. You told me that 1471 appendix, that paragraph that I was asking you about, which is what the district court cites as offering the inconsistency, was cut and paste. I think those were your words from your Markman brief. I'm sorry, I didn't hear. I'm not hearing. I think you said it was cut and paste from your Markman brief. So how could it be inconsistent with the Markman brief? Do you remember saying that? Parts of it were copied with some, and I think we said some stylistic changes, yes. Okay, well, I just went back and looked at your Markman brief. Are you talking about page 100 of the appendix? Is that the portion of the Markman brief that you are referencing that it was cut and paste from? Portions were cut and pasted from 100 through 102. And, Your Honor, if I could complete the thought, Mr. Cotter, when he stood up here, pointed you to the use of the specialized software to do the database interface in the Alice as the inconsistent statement. If you read pages 100 and 102 of the appendix, it also talks about the use of the specialized software. In 102, it specifically talks about this database interface problem that it's solving. No, but I think you misunderstand, Mr. Kaplan. I'm not seeking to have you address the merits of the argument. I'm seeking to ask you why I shouldn't sanction you for misleading the court in your oral argument. I'm sorry, Your Honor? I'm asking you to justify the statement you made in oral argument, which I do not believe to be factually accurate. You stood in front of me in oral argument and suggested that what appears in 1471, the precise language I was questioning you about, was identically present in your Markman brief, and therefore how could you possibly have said something contradictory when you cut and pasted it from your Markman brief into your Alice brief? And I'm looking at the pages of your Markman brief, and I see none of the language in that paragraph present identically in there, only the picture copy. So I'm trying to ascertain... I'm sorry, let me... Or did you misrepresent to me in oral argument what actually had occurred? I didn't complete what I should have completed, Your Honor, and thank you for pointing that out, and I apologize. What I meant to say is we did take the image and the text below and copy it right in when we started the Alice brief. Then we began wordsmithing to do the Alice brief. Well, wait, the text right below was not copied in. The technology in the 328... The very next sentence is not there. None of the sentences are there. I'm sorry. I can't find any of them. Are you referring to the technology in the 328 patent? You told me you took page 1471, and what I was reading to you from it, an important aspect of the 328 is a specialized, pre-determined or predefined software interface. This specialized software, yada, yada, yada, the technology in the patent thus represents a specific technical solution, and you told me all of that was cut straight from your Markman brief. So I'm looking at page 100, and I don't see any of the language about the specialized, predefined software, the very language that I was quoting to you that the district court quoted. I don't see that in the Markman brief here, and I'm wondering if I missed it. I don't see a citation to the office action response footnote 4 where you proclaim there was no small task to greet these software interfaces either. I don't see anywhere where it says the technology of that software is a specific technical solution in this Markman brief. Your Honor, what I said in my brief is what I intended to say here today, and if it wasn't clear, it was wrong. What I intended to say and what I say again what happened is when we started preparing the Alice brief, we copied the figure in the text below it from the Markman, and then we started wordsmithing. And if you read below the figure in the Alice brief, an important aspect of the 328 invention is a specialized, predefined software interface. If you read below the figure at page 100, an important aspect of the 328 invention is the special interface labeled above. So we definitely tweaked it. I should not have said that it wasn't tweaked, and I even said in the brief that it was copied and then some stylistic alterations or non-substantive alterations. Well, you say non-substantive. The word software doesn't appear anywhere in the Markman brief under the picture, and yet that's exactly what the district court said was the problem. The word software, you were flip-flopping on how important it was, and none of the citations appear. While you may have been a little more careful in your brief than you certainly were here in oral argument. Your Honor, it does say software at page 102. The 328 patent required some additional software to set up interfaces between the central computer and database computers, and all I intended to say was that the same stuff was copied and then maybe, you know, wordsmith in the Alice, but the stuff that Mr. Cotter pointed to about use of the specialized software being the inventive step to solve this database interface problem, if you read 101 and 102, that is what we said there, compared with prior arts and... Well, your time is up, Mr. Kaplan. We've got your argument under submission. I thank both counsel and the cases submitted. I just want to apologize for that. I didn't intend it. The honorable court has adjourned until tomorrow at 10 a.m.